UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

| | | |
|---|---|---|
| WADELL SMITH, | : | **REPORT AND** |
| Petitioner, | : | **RECOMMENDATION TO THE HONORABLE** |
| -against- | : | **SHIRA A. SCHEINDLIN** |
| D. LACLAIR, Superintendent, Upstate Correctional Facility | : | 04 Civ. 4356 (SAS)(FM) |
| | : | |
| Respondent. | | |
| | : | |

------------------------------------------------------------x

**FRANK MAAS**, United States Magistrate Judge.

I.  Introduction

Petitioner Wadell Smith ("Smith") brings this pro se habeas proceeding, pursuant to Title 28, United States Code, Section 2254, to challenge his conviction, after a jury trial in Supreme Court, Bronx County, on four counts of Robbery in the First Degree, and one count each of Criminal Possession of a Weapon in the Second and Third Degrees. On September 25, 2000, Justice Bonnie Wittner, before whom the case was tried, sentenced Smith, as a persistent violent felony offender, to concurrent indeterminate prison terms which, in the aggregate, amount to a sentence of twenty-two years to life. (See Pet. ¶¶ 3-5). In his petition, Smith raises a series of claims arising out of the two-year delay between his arrest and trial. For the reasons set forth below, I recommend that the petition

be denied. Additionally, pursuant to 28 U.S.C. § 2253(c)(2), Smith should be denied a certificate of appealability because he has failed to make a substantial showing of the denial of a constitutional right.

A.  Relevant Facts

In view of the narrow issues raised in Smith's petition, the facts underlying his conviction are of only marginal relevance. For this reason, the failure of either side to furnish the Court with a copy of the trial transcript does not present a problem. I therefore have relied on the state court briefs for the following factual recitation. A review of those briefs indicates that a reasonable juror could have found as follows:

On July 31, 1998, Carlington Laing ("Laing") was selling marijuana in the vicinity of 429 Lenox Avenue in Harlem. (See Decl. of Ass't Att'y Gen. Danielle L. Attias, dated Dec. 30, 2004 ("Attias Decl."), Ex. A (Def.'s Br. on Appeal ("Def.'s Br.")[1] at 8 (citing Tr. 116, 186-87)). At approximately 7 p.m., Smith, his co-defendant Garney Hayes ("Hayes"), and a man on crutches who was a prior customer, approached Laing, who directed them into the building. (Id. at 9 (citing Tr. 120, 123)). Once the men were inside, Smith grabbed Laing and pushed him back. (Id. (citing Tr. 123-24)). Hayes then hit Laing in the back of the neck and threw him to the floor. (Id.). Thereafter, Smith pulled out a revolver, placed it against Laing's head, and took approximately $100 from

---

[1]  Smith was represented on appeal by the Center for Appellate Litigation. (See id. Ex. A). In addition, Smith filed his own pro se brief on appeal. (See id. Ex. B ("Smith Suppl. Br.")).

Laing's pockets. (Id. (citing Tr. 125-26)).

Smith and Hayes next asked Laing about the location of his "stash" and threatened to kill him if it was not disclosed. (Id. (citing Tr. 125-28)). With Hayes' knife at his neck, Laing led the men to the back of the building where his drugs were kept. (Id. (citing Tr. 126, 129)). One of the men took the drugs and put them in a knapsack. (Id. (citing Tr. 131)).

As Laing's assailants were leaving the building, they encountered Vincent Laing ("Vincent") (no relation to Carlington Laing) who was entering the building with his son. (Id. (citing Tr. 132)). Smith pointed the gun at Vincent, and took his jewelry and $600 in cash. (Id. at 10 (citing Tr. 138, 373, 378, 386, 407)).

Smith and Hayes then left the building. (Id. (citing Tr. 136, 379-80)). Laing also walked outside and around the corner, at which point he saw them place their bag of looted materials in the back of a parked van. (Id. at 10-11 (citing Tr. 138, 140)). When a friend playing basketball nearby asked what had happened, Laing reported that he had been robbed. (Id. at 11 (citing Tr. 138-39, 144)). The friend, in turn, reported the incident to Detective Byron Chavers ("Chavers"), who was in the area. (Id. (citing Tr. 139, 532, 538-39)). Chavers chased Hayes and Smith on foot. (Id. (citing Tr. 550, 553-54)). He saw the two men stop at the van, then caught and handcuffed Smith, and radioed a description of Hayes to other police officers. (Id. (citing Tr. 553-54, 560-64)). Detective Salvador Toro heard the transmission and successfully apprehended Hayes. (Id. at 11-12

(citing Tr. 754-55, 767)).

In the meantime, Laing had approached the van, which drove off with Laing in pursuit. (Id. at 12 (citing Tr. 144-45, 559-60)). Several blocks away, the driver stopped the van and fled on foot. (Id. (citing Tr. 145)). After he noticed a gun on the driver's side of the van, Laing called "911." (Id. at 12 (citing Tr. 144-45, 147)). A little while later, Chavers recovered from the van a revolver and a knapsack containing marijuana, a hunting knife, some jewelry, and $608 in cash. (Id. (citing Tr. 578, 580-81, 594, 608)).

B.  Procedural History

Following their arrest on July 31, Smith and Hayes were arraigned on a felony complaint on August 2, and indicted on August 12, 1998. (Smith Suppl. Br. at 17). In May 1999, Hayes' attorney moved for the release of his client pursuant to the speedy trial requirements of Section 30.30 of the New York Criminal Procedure Law ("CPL"). (Id. at 5). Thereafter, Hayes was released on his own recognizance following the District Attorney's admission that more than ninety days of time chargeable to the People had elapsed. (See id. at 5, 17; Attias Decl. Ex. C (Resp't's Br. on Appeal ("Resp't's Br.")) at 42). Smith's defense counsel neither joined in his co-counsel's motion, nor adopted Smith's pro se motion seeking relief under CPL § 30.30. (Smith Suppl. Br. at 21). For these reasons, the court eventually granted Smith's application for a new attorney, who first appeared on April 26, 2000. (Id.; Resp't's Br. at 42 n.17). Smith's new counsel pursued his speedy trial motion, which resulted in Smith's release on his own

recognizance on July 25, 2000, but not the dismissal of the indictment. (See Smith Suppl. Br. at 20-23).

Smith's trial began on August 7, 2000, slightly more than two years after his arraignment. (Id. at 2). Following his September 25, 2000 conviction, Smith perfected an appeal. (Id.). As part of his appeal, Smith filed a pro se brief which asserted several claims, including a Sixth Amendment speedy trial claim. On March 11, 2003, the Appellate Division, First Department, unanimously affirmed his conviction. People v. Smith, 755 N.Y.S.2d 600 (1st Dep't 2003). Thereafter, by letter application dated March 17, 2003, Smith sought leave to appeal to the New York Court of Appeals, (see Attias Decl. Ex. E), which was denied on May 12, 2003. People v. Smith, 100 N.Y.2d 543 (2003) (table).

Smith's petition is dated March 25, 2004, and was timely received by the Pro Se Office of this Court on April 30, 2004. (See Docket No. 1). Liberally construed, Smith's petition appears to raise three closely-related claims arising out of the lengthy pretrial delay in his case: (i) a Fifth and Fourteenth Amendment due process claim because Justice Wittner failed to conduct a computational hearing pursuant to CPL § 30.30; (ii) a claim that the People violated the federal Speedy Trial Act, 18 U.S.C. § 3161, et seq.; and (iii) a claim that his prosecution violated Rule 48(b) of the Federal Rules of Criminal Procedure ("Rule 48(b)"), which he erroneously refers to as the Speedy Trial Act. (See Pet. at 6-9). On January 3, 2005, Your Honor referred the case to me for a

Report and Recommendation. (See Docket No. 7).

II.     Discussion

    A.     Standard of Review

A habeas corpus petition is not a vehicle to relitigate every issue previously determined in state court. Herrera v. Collins, 506 U.S. 390, 401 (1993). Rather, a state prisoner seeking habeas relief under Section 2254 must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petitioner bears the burden of proving, by a preponderance of the evidence, that his rights have been violated. Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997).

Section 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), provides in part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1) (emphasis added).

As the Second Circuit noted in Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000), the Supreme Court has "construed the amended statute so as to give independent

meaning to 'contrary [to]' and 'unreasonable.'" "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 412-13 (2000). Under the "unreasonable application" clause, a federal habeas court should "ask whether the state court's application of clearly established federal law was objectively unreasonable." Id. at 409. This standard does not require that reasonable jurists would all agree that the state court was wrong. Id. at 409-10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Stinson, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d Cir. 2000)).

Section 2254(d)(2) further authorizes the federal courts to grant a habeas writ when a claim considered on the merits in state court "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Finally, to the extent that a habeas petition challenges factual findings, Section 2254(e)(1) provides that "a determination of a factual issue by a State court shall be presumed to be correct" and that "[t]he [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

"If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Williams v. Taylor, 529 U.S. at 389. As discussed below, because Smith has failed to show that his conviction resulted from such constitutionally infirm proceedings in state court, he is not entitled to federal habeas relief.

B.   Exhaustion

A court may not grant a writ of habeas corpus to a person in state custody unless it appears that the applicant has exhausted all available state court remedies, or there is an absence of state corrective process, or circumstances render that process ineffective to protect the petitioner's rights. 28 U.S.C. §§ 2254(b)(1)(A), (B). To satisfy the statutory exhaustion requirement, a petitioner must show that he presented "the substance of the same federal constitutional claim that he now urges upon the federal courts to the highest court in the . . . state." Aparicio v. Artuz, 269 F.3d 78, 89-90 (2d Cir. 2001) (internal quotations and citations omitted). In order to meet this requirement, it is not necessary that the federal constitutional claim be presented to the state courts in haec verba; rather, there are a number of ways in which the claim may be presented, including

> (a) reliance on pertinent federal cases employing constitutional analysis,
>
> (b) reliance on state cases employing constitutional analysis in like fact situations,

> (c) assertion of the claim in terms so particular as to call
> to mind a specific right protected by the Constitution,
> and
>
> (d) allegation of a pattern of facts that is well within the
> mainstream of constitutional litigation.

Daye v. Att'y Gen. of N.Y., 696 F.2d 186, 194 (2d Cir. 1982).

The Respondent concedes that Smith's first and second grounds for relief have been exhausted. (See Resp't's Mem. at 12). The Respondent nevertheless maintains that the third claim asserted under Rule 48(b) (and erroneously denominated as a Speedy Trial Act claim) is unexhausted. (Id. at 13). The Advisory Committee notes regarding the adoption of Rule 48(b) in 1944 indicate that it restates "the inherent power of the court to dismiss a case for want of prosecution." Fed. R. Crim. Proc. 48(b) advisory committee's note. Subsequently, however, the Supreme Court recognized that Rule 48(b) gives effect to the Sixth Amendment constitutional right to a speedy trial. See Pollard v. United States, 352 U.S. 354, 361 n.7 (1957). In his pro se supplemental brief to the Appellate Division, Smith couched his speedy trial claim in the following terms: "The appellant was denied his constitutional right to a speedy trial according to the law codified in CPL 210.20 subd. 1(G), 30.30 subd. 1(A) and U.S. Constitution Amend. 6, along with N.Y.S. Const. Art 1 subd. 6, which are absolute in definition and nature." (Smith Suppl. Br. at 4). In addition, Smith argued that he was entitled to a time computation hearing under the procedure described in Barker v. Wingo, 407 U.S. 514

(1972). (Id. at 27). Although his court-appointed counsel did not initially join in these assertions, his application for leave to appeal to the Court of Appeals relied on "all the issues raised in [his] briefs," including his "pro se supplemental brief." (Attias Decl. Ex. E). Accordingly, to the extent that Smith's Rule 48(b) claim is essentially an assertion of his Sixth Amendment speedy trial rights, it has been exhausted. On the other hand, to the extent that Smith argues that the state court failed to exercise its discretion properly, his claim is unexhausted. Even if a claim is unexhausted, a habeas court may deny a claim if it lacks merit. See 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). As shown below, there consequently is no need to require Smith to return to state court to exhaust the unexhausted portion of his third claim.

 C. Merits

  1. Due Process Claim

Smith claims that his Fifth and Fourteenth Amendment due process rights were violated by Justice Wittner's failure to conduct an evidentiary hearing in accordance with CPL § 30.30. (See Pet. ¶ 13). Where a defendant makes a showing of extensive pretrial delay, the New York courts typically require a hearing. See, e.g., People v. Rozell, 533 N.Y.S.2d 15, 16 (2d Dep't 1988); People v. Vasquez, 433 N.Y.S.2d 471 (2d Dep't 1980). A trial court's failure to adhere to a state procedural rule, however, does not by

itself constitute a deprivation of due process. Ali v. Szabo, 81 F. Supp. 2d 447, 453 (S.D.N.Y. 2000) (quoting Russell v. Coughlin, 910 F.2d 75, 78 n.1 (2d Cir. 1990)) ("[f]ederal constitutional standards rather than state law define the requirements of procedural due process."). Rather, "[t]he very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." Cafeteria & Restaurant Workers Union, Local 473, AFL-CIO v. McElroy, 367 U.S. 886, 895 (1961).

Here, Smith's post-conviction papers plainly addressed the trial court's failure to grant him an evidentiary hearing. (See, e.g., Smith Suppl. Br. at 4). However, there has been no showing that he, in fact, requested such a hearing in his pro se motion filed prior to trial. Indeed, even after he was assigned a new lawyer who filed an extensive CPL § 30.30 motion on his behalf, Smith did not seek a hearing. (See Pet. Ex. D) (Not. of Mot.). That due process did not require a hearing is perhaps best demonstrated by the fact that Smith was released by Justice Wittner after his counsel filed this motion even though there was a hearing. In these circumstances, there is no basis for Smith's claim that his due process rights were violated, much less that he is entitled to be released on this basis.

2. Sixth Amendment Claim

Smith also claims that his Sixth Amendment right to a speedy trial was violated. There is no bright line rule which establishes when a Sixth Amendment speedy trial violation has occurred. Rather, courts must balance four factors: (i) the length of the

delay; (ii) the reason for the delay; (iii) the defendant's assertion of his right; and (iv) the prejudice to the defendant resulting from the delay. Barker, 407 U.S. at 530; Rayborn v. Scully, 858 F.2d 84, 89 (2d Cir. 1988). No individual factor is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial." Barker, 407 U.S. at 533. Instead, the factors are "related . . . and must be considered together with such other circumstances as may be relevant." Id.

Turning first to the length of the delay, this Court need not consider the remaining Barker factors unless Smith is able to show the existence of "some delay which is presumptively prejudicial." Id. at 530. Here, more than two years elapsed between Smith's arrest and the commencement of his trial. (See Smith Suppl. Br. at 2). In this Circuit, a "delay of one year is sufficient to trigger judicial review for a Sixth Amendment violation." United States v. Gutierrez, 891 F. Supp. 97, 100 (E.D.N.Y. 1995) (citing Doggett v. United States, 505 U.S. 647, 657-58 (1992)). Accordingly, the delay in this case plainly suffices.

The mere fact that it took two years to bring Smith to trial does not mean that he necessarily presents a compelling case. Indeed, the Second Circuit has declined to find a speedy trial violation in another relatively straightforward case involving a comparable delay. See United States v. Vasquez, 918 F.2d 329, 338 (2d Cir. 1990) (twenty-six-month delay in case involving one sale of narcotics). Longer delays have also been tolerated in appropriate circumstances. See, e.g., United States v. Zedner, 401 F.3d

36, 48 (2d Cir. 2005) (seven-year delay did not violate Sixth Amendment right to a speedy trial); Montalvo v. United States, 862 F.2d 425, 426 (2d Cir. 1988) (no speedy trial violation for eight-year delay); Rayborn, 858 F.2d at 89 (denying habeas relief in state murder case despite seven-year delay). That said, "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge." Barker, 407 U.S. at 531.

Of course, "[a] deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the [prosecution. However, a] more neutral reason such as negligence or overcrowded courts should be weighted less heavily." Id. In this case, Smith contends that the prosecution was responsible for 331 days, or approximately half of the two years of trial delay. (See Smith Suppl. Br. at 17-24). The Respondent asserts, however, that only 159 days were chargeable to the prosecution. (Resp't's Br. at 55). Even if Smith's version of the facts were to be accepted, it is clear that both the prosecution and the defense share the blame for the pretrial delays in this case. The second Barker factor, therefore, does not tip decidedly in either side's favor.

The third Barker factor weighs in favor of Smith, because he asked the court on multiple occasions to dismiss the indictment against him on speedy trial grounds. (See Smith Suppl. Br. at 4-5; Pet. ¶¶ 10, 12; Attias Decl. Ex. H).

The fourth Barker factor requires the Court to assess the degree of prejudice

to the defendant. Thus, the court should consider whether: (i) the pretrial incarceration was oppressive; (ii) a speedier trial would have minimized the "anxiety and concern of the accused;" or (iii) the defense was impaired by the delay. Barker, 407 U.S. at 532. The last of these factors obviously is the most important because it implicates the validity of the justice system. Parrilla v. Goord, No. 02 Civ. 5443 (WHP), 2005 WL 1422132, at *8 (S.D.N.Y. June 20, 2005) (citing Barker).

Although Smith maintains that he suffered a great deal of physical and emotional discomfort during his pretrial detention, (see Docket No. 10 (Smith Reply Mem.) at 10-11), there is nothing to suggest that the conditions he faced were harsher than those confronted by most inmates who are detained pending trial. His showing of prejudice is also far from overwhelming. Indeed, Smith never even raised a claim of prejudice in his appellate briefs or habeas petition. It was not until he filed his "Traverse" to the Respondent's papers in opposition to his habeas petition that Smith addressed the specific injuries allegedly caused by his delayed trial. He now claims that his wife divorced him because of his continued incarceration and that he lost his job as a shipper for the same reason. (Id. at 9). While the loss of his wife and job are certainly cause for concern and anxiety, Smith has not demonstrated any causal relationship between these events and the trial delays. For example, Smith has asserted that his wife left him after three consecutive years of incarceration (see id.), yet only two years elapsed between Smith's arrest and his trial. Smith also says that his defense was impaired by his inability to gather

-14-

exculpatory evidence and the dimming of witnesses' memories, (see id. at 10, 15), but he has offered no details to support these conclusory assertions. Accordingly, the fourth Barker factor weighs in the Respondent's favor.

After reviewing Smith's CPL § 30.30 motion, the state trial court granted him bail, but declined to dismiss the indictment. On appeal, the Appellate Division also rejected his speedy trial claims. In the absence of any real showing of prejudice, Smith cannot show, as he must, that these determinations were objectively unreasonable. There consequently is no basis for the Sixth Amendment speedy trial claim asserted in his habeas petition.

3. Speedy Trial Act

The federal Speedy Trial Act, 18 U.S.C. § 3161, et seq. establishes time limits for the completion of various stages of a federal criminal prosecution. Under the statute, subject to certain exclusions of time, an indictment must be filed within thirty days after a defendant's arrest, and the trial must commence within seventy days from the date the indictment is filed. 18 U.S.C. § 3161(c)(1). Since the trial in this case did not commence for two years after his arrest and the People conceded that at least 159 days were chargeable to the prosecution, (see Resp't's Br. at 55), Smith contends that his rights under the Speedy Trial Act were violated. (See Pet. ¶ 13).

What Smith's argument overlooks is that the Speedy Trial Act is applicable

only to federal cases. See 18 U.S.C. §§ 3161(a), 3172(2); United States v. Leonard, 639 F.2d 101, 103 (2d Cir. 1981); United States v. Lai Ming Tanu, 589 F.2d 82, 88 (2d Cir. 1978). Smith was charged and convicted of offenses under New York law and never was in federal custody. (Pet. ¶ 5). Accordingly, the federal Speedy Trial Act is plainly inapplicable.

    4. Rule 48(b)

Smith's only other claim is that the trial court violated Rule 48(b) by failing to dismiss the indictment based on "unnecessary delay . . . in bringing [him] to trial." (Pet. at 8). Once again, the body of law that Smith relies upon, the Federal Rules of Criminal Procedure, applies only to federal court proceedings. See Fed. R. Crim. Proc. 1(a)(1). Accordingly, Rule 48(b) does not afford Smith a basis for habeas relief.

In any event, the analysis required under Rule 48(b) is coterminous with that of a Sixth Amendment claim. See, e.g., Pollard, 352 U.S. at 361 n.7; United States v. Infanti, 474 F.2d 522, 527 (2d Cir. 1973); United States v. Singleton, 460 F.2d 1148, 1152 (2d Cir. 1972). Thus, even if Smith were able to state a claim under Rule 48(b), the result would necessarily be the same as that reached under the Sixth Amendment. Accordingly, Smith's third claim under Rule 48(b) is meritless.

III. Conclusion

For the foregoing reasons, Smith's habeas petition should be denied. Furthermore, because Smith has failed to make the substantial showing of the denial of a constitutional right required by 28 U.S.C. § 2253(c)(2), a certificate of appealability should not be issued.

IV. Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties are hereby directed that if they have objections to this Report and Recommendation, they must, within ten days from today, make them in writing, file them with the Clerk of the Court, and send copies to the chambers of the Honorable Shira A. Scheindlin, and to the chambers of the undersigned, at the United States Courthouse, 500 Pearl Street, New York, NY 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Scheindlin. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72(b).

Dated:   New York, New York
         March 13, 2006

/s/ Frank Maas
FRANK MAAS
United States Magistrate Judge

Copies to:

Hon. Shira A. Scheindlin
United States District Judge

Wadell Smith, [Pro Se]
#00-A-5783
Auburn Correctional Facility
P.O. Box 618
Auburn, New York 13024

Danielle L. Attias
Assistant Attorney General
Office of the Attorney General of the State of New York
120 Broadway
New York, New York 10271